UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
                                                                       :
UNITED STATES OF AMERICA,              :
                                                                       :
                 -against-                        :          24 Cr. 339 (LGS)
                                                                        :
TREVIS RAPHAEL,                           :          **OPINION & ORDER**
                                              Defendant.   :
------------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

       The Sealed Complaint charges Defendant Trevis Raphael with possession of a firearm after a felony conviction pursuant to 18 U.S.C. § 922(g)(1). Defendant filed a motion to suppress the firearm, ammunition and all other physical evidence seized from the vehicle and, in the alternative, requests an evidentiary hearing. For the reasons below, the motion is denied.

**I.       BACKGROUND**

       The following undisputed facts are taken from the parties' submissions, including the video recording of Defendant's encounter with the police.

       On January 12, 2024, Defendant drove his mother's car into a gas station and began to pump gas. Several officers from the New York City Police Department ("NYPD") approached him, and one asked Defendant why the car's rear license plate was covered. Defendant responded that it was covered to avoid getting tickets and that he would remove the cover. Defendant provided his driver's license and the vehicle's registration as requested.

       While Defendant was pumping gas, the officers ran Defendant's name through a law enforcement database and found an active outstanding arrest warrant from 2007, relating to a summons for consumption of alcohol in public. One officer asked Defendant whether he had any "summons that [he] got recent[ly] that [he] ha[s]n't taken care of," and Defendant responded in the negative. The officer asked whether Defendant had any weapons in the car, and Defendant

responded that he is "not interested in doing none of that." The officer asked whether Defendant minded if the officers searched the vehicle, and Defendant refused, saying "I didn't do nothing wrong."

When Defendant motioned to retrieve his documents and asked for them back, the officer responded "hold on." Defendant then began to walk to the driver's seat door and told the officer "Ima sit in my car" because it was cold and raining. The officer followed Defendant and told him to stay outside the vehicle. Defendant did not comply with the officer's instruction. Once Defendant sat in the driver's seat, multiple officers grabbed him and repeatedly told him to step out of the vehicle. Defendant protested the officers' conduct and asked why they were trying to get him out of the car. Eventually an officer tased Defendant, and he was pulled onto the ground.

About 15 minutes later, after being placed in an ambulance, an officer told Defendant that he was arrested for obstructing the vehicle's license plate and for trying to "snatch" his license and "run." The officers took Defendant to the hospital via ambulance following the tasing and then took him to the precinct for processing. Officers also transported his mother's car to the precinct, vouchered it and conducted an inventory search.

During the inventory search, officers discovered a black 9mm luger caliber, semiautomatic Taurus pistol, model G3 in the vehicle's center console. The firearm's chamber contained one round of 9mm ammunition and the firearm's magazine contained 14 rounds of 9mm ammunition. Officers also found an extended magazine containing approximately 26 rounds of 9mm ammunition in the vehicle's glovebox.

Defendant was charged with criminal possession of a loaded firearm in the second degree, criminal possession of a weapon in the fourth degree, resisting arrest, obstruction of

governmental administration in the second degree, unlawful possession of certain ammunition feeding devices, driving with a single license plate and having a knowingly obscured covered plate. On April 24, 2024, Defendant was charged in the U.S. District Court for the Southern District of New York with possession of a firearm after a felony conviction, pursuant to 18 U.S.C § 922(g)(1).

## II.    STANDARD

The Fourth Amendment guarantees people the right "to be secure in their . . . effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because "the rights assured by the Fourth Amendment are personal, courts suppress evidence only at the instance of one whose own protection was infringed by the search and seizure."[1] *United States v. Lewis*, 62 F.4th 733, 741 (2d Cir. 2023) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). As the movant, Defendant bears the burden of showing that the vehicle search violated his rights under the Fourth Amendment. *Id.*

## III.    DISCUSSION

### A.    Motion to Suppress

Defendant's motion to suppress the seized evidence is denied because the impoundment and subsequent inventory search of the vehicle were both reasonable. *See United States v. Lyle*, 919 F.3d 716, 730 & n.2 (2d Cir. 2019) (analyzing whether the impoundment is reasonable, and observing that courts have analyzed the subsequent search similarly).

---

[1] Unless otherwise indicated, in quoting cases, all internal quotation marks, footnotes and citations are omitted, and all alterations are adopted.

1.  **Impoundment of the Vehicle**

The impoundment of Defendant's vehicle was reasonable under the totality of circumstances. "It is well established that police have the authority, despite the absence of a warrant, to seize and remove from the streets automobiles in the interests of public safety and as part of their community caretaking functions." *Id.* at 728 (citing *South Dakota v. Opperman*, 428 U.S. 364, 368-69 (1976)). The totality of the circumstances determines the lawfulness of officers' decision to impound a vehicle. *Id.* at 731 (citing *Ohio v. Robinette*, 519 U.S. 33, 39 (1996)); *Owens v. Fitzgerald*, No. 23 Civ. 1280, 2024 WL 2315335, at *2 (2d Cir. May 22, 2024) (summary order) ("The reasonableness of an impoundment decision is based on all the facts and circumstances of a given case.").

Here, as in *Lyle*, Defendant was the car's "sole occupant," meaning "there was no third party immediately available to entrust with the vehicle's safekeeping" upon Defendant's arrest. *Lyle*, 919 F.3d at 731; *accord United States v. Rivera*, 700 F.Supp.3d 60, 78 (S.D.N.Y. 2023). Officers "could not be certain how long the [ ] car would be unattended in [Defendant's] absence," despite officers likely "not expect[ing Defendant] to be in custody [for] long." *Lyle*, 919 F.3d at 731. "Even if a lawful parking space could have been found," the vehicle's impoundment prevented the "risk of [it] being stolen or damaged." *Rivera*, 700 F. Supp. 3d at 78 (citing *United States v. Miner*, 956 F.2d 397, 399 (2d Cir. 1992)) ("[I]t is part of the 'community caretaking function' of the police to protect a motor vehicle from vandalism"). Similar to *Lyle*, by impounding the vehicle, the officers also prevented it from becoming a public nuisance. *See Lyle*, 919 F.3d at 731. While the car was not "on a public street," leaving the car unattended at the gas station could have interfered with the gas station's business or customers' ability to use the lot. *See id.*; *Harper v. Town of Newburgh*, No. 18 Civ. 2647, 2020 WL 1140858, at *14

4

(S.D.N.Y. Mar. 6, 2020) ("[W]here left on the street the vehicle could impede traffic or threaten public safety and convenience, impoundment is appropriate under the community caretaking function."). Under these circumstances, impoundment of the vehicle was reasonable.

Defendant's argument that the officers were *solely motivated* by suspicion of criminal activity to impound the vehicle is rejected. Regardless of any investigatory motive the officers may have had, they had to decide what to do about Defendant's vehicle after having made the arrest, which Defendant does not dispute was lawful. An officer's "subjective intent alone . . . does not make otherwise lawful conduct illegal or unconstitutional," so "long as the circumstances, viewed objectively, justify that action." *Whren v. United States*, 517 U.S. 806, 817 (1996). "[D]ecisions to impound and inventory-search that otherwise are reasonable will not be rendered unreasonable merely because an officer is motivated in part by investigatory purposes or by the expectation that the search will yield evidence." *Rivera*, 700 F. Supp. 3d at 78. Defendant has failed to carry his burden of showing that the officers acted "*solely* for the purpose of investigation," and therefore acted unreasonably "in exercising their discretion to impound the [ ] car." *Lyle*, 919 F.3d at 731 (emphasis added).

### 2. Inventory Search of the Vehicle

The inventory search of the car after impoundment was reasonable. When law enforcement officials "take a vehicle into custody, they may search the vehicle and make an inventory of its contents without need for a search warrant and without regard to whether there is probable cause to suspect that the vehicle contains contraband or evidence of criminal conduct." *United States v. Williams*, 930 F.3d 44, 53 (2d Cir. 2019); *accord United States v. Fayton*, 697 F. Supp. 3d 179, 192 (S.D.N.Y. 2023). An inventory search serves "(1) to protect the owner's property while it is in police custody; (2) to protect the police against spurious claims of lost or

stolen property; and (3) to protect the police from potential danger." *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir. 2008); *accord United States v. Bignon*, 813 F. App'x. 34, 37 (2d Cir. 2020) (summary order).

Here, as in *Lopez*, the inventory search was reasonable because "the officials conducting the search acted in good faith pursuant to standardized criteria or established routine." *Lopez*, 547 F.3d at 370 (citing *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994)). The NYPD Patrol Guide shows "that there is a uniform standardized policy in the [NYPD] to do a complete inventory search of the contents when a car is impounded . . . . in order to see if there were any items that needed to be safeguarded." *Id.* The officers, as directed, conducted a full inventory of the vehicle in compliance with the NYPD Patrol Guide.

   B.   **Request for Evidentiary Hearing**

Defendant's request for an evidentiary hearing is denied because he has not shown "a contested issue of fact." *United States v. Alcantara*, No. 22 Cr. 152, 2023 WL 3883961, at *5 (S.D.N.Y. June 8, 2023) (citing *United States v. Pena*, 961 F.2d 333, 339 (2d Cir. 1992)). A material fact is one that would change the outcome of this motion. *See United States v. Barnes*, No. 23-6385-CR, 2024 WL 4368274, at *1 (2d Cir. Oct. 2, 2024) (summary order) (affirming a district court's denial of evidentiary hearing when "the validity of the [search] did not depend on" the factual issue raised by defendant); *United States v. Anderson*, No. 24 Cr. 009, 2024 WL 2784332, at *3 (S.D.N.Y. May 28, 2024). While the officers' subjective intent in impounding and searching the car may be in dispute, as discussed above, that intent is legally irrelevant under the circumstances here.

6

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to suppress the firearm, ammunition and all other physical evidence seized from the vehicle Defendant was driving on January 12, 2024, and, in the alternative, to obtainan evidentiary hearing, is denied.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 23.

Dated: November 6, 2024
       New York, New York

                                            **LORNA G. SCHOFIELD**
                                            **UNITED STATES DISTRICT JUDGE**